JAMES WRIGHT *vs.* OREN ANDREWS & another.

Somerset.    Opinion June 25, 1879.

*Indorsers.    Notice.    Liability.*

Sureties on a promissory note made in Massachusetts, and while the statute there was in force, approved June 30, 1874, are entitled to notice of non-payment thereof, when, and only when, indorsers would be.

Having been fully secured by a pledge of money for their liability on the note, and money having been appropriated to the payment thereof, and the sureties authorized to use it for that purpose, they were not entitled to notice of non-payment.

ASSUMPSIT by the plaintiff as indorsee against the defendants, as makers of a promissory note, of which the following is a copy:

"$800.00.    Lawrence, Mass., Aug. 28, 1877.    Thirty days after date I promise to pay to the order of Ellen E. McIntire eight hundred dollars, payable at ———, value received.    Rufus Andrews."

Indorsed in blank " O. Andrews & Co.," on one end of the note.    On the other end " Ellen E. McIntire."    $200.00 was indorsed on the note under date of August 28, 1877.

The writ is dated October 8, 1877, and contains a money count.

The action was originally brought against Rufus Andrews, Oren Andrews and Sumner Andrews, all of whom live in Lawrence, Mass., and property of the two latter was attached in this state.    Subsequently the plaintiff discontinued as to Rufus Andrews.    The plaintiff, in 1877 and 1878, resided in Skowhegan, in this county.

After the testimony was out the case was withdrawn from the jury by consent and submitted to the presiding judge, with right to except.    The following facts were either admitted or found by him to exist: At the time of the making of the above mentioned note the original parties to it all lived in Lawrence, Mass., and have ever since continued to reside there.    The note was made there.    The present defendants were, and now are, a partnership doing business as grocers there.    Said note, before being passed to the payee, was signed by Rufus Andrews and indorsed " O. Andrews & Co." by Sumner Andrews, and was then delivered to

the payee. No question was made as to the liability of the partnership, if either partner was liable on the note. The consideration thereof was the sale and transfer by the payee to Rufus Andrews of the furniture, etc., of a boarding-house previously owned by her. The defendants were to become the sureties for their brother, Rufus Andrews, for the purchase money for which the note was given, and the name of the firm was indorsed accordingly. It was admitted that there was a valid consideration for the note.

It was proved that a few days before the note fell due it was brought by the payee to Skowhegan and indorsed and delivered by her to her father, the plaintiff, he paying her nothing for it. The two hundred dollars indorsed under date of August 28, 1877, was so indorsed at that time in pursuance of an agreement between the payee and these defendants, and covered the amount of a bill which they had against the payee for groceries, and they gave her a receipt therefor in full, for groceries furnished to date, and one of the defendants testified that they had no claim against her except for groceries. The defense relied on was that no demand for payment was made upon Rufus Andrews on the last day of grace, nor any seasonable notice given to the defendants. Defendants claimed that such demand and notice was required by a statute of Massachusetts (c. 104 of the laws of 1874), which they put in evidence, as follows: " Be it enacted, etc., as follows : All persons becoming parties to promissory notes payable on time by a signature in blank on the back thereof, shall be entitled to notice of the non-payment thereof the same as indorsers. Approved June 30, 1874." In the absence of any further evidence the presiding judge found that said statute was an existing law in Massachusetts at the time of these transactions.

He also found that no proper demand was made upon Rufus Andrews on the last day of grace, nor was any seasonable notice of non-payment, sufficient to charge an indorser entitled to notice, given. But he found, upon testimony offered in the case, that at the time the defendants indorsed the note, as sureties for their brother, in the manner before stated, they were fully secured for all liability that they then assumed as such sureties.

The following facts appeared : When the signature of the firm was placed on the back of the note by Sumner Andrews, he received from Rufus Andrews, as security for the firm's indorsement, a bank book showing a deposit in a savings bank, in the name of Rufus Andrews' wife, of a sum exceeding $600. No proof was offered of any written transfer of the book or its contents, but Sumner Andrews received it without objection as security. On October 1, 1877, Rufus Andrews sent his wife to get the money, to pay the note, which was on that day presented to him by John H. McIntire, husband of the payee, who received it from the plaintiff for collection. John H. McIntire had requested payment of the note from Rufus Andrews, on Saturday, September 29, 1877, but without presenting the note, and did not then have it, but received it Monday, October 1. On Saturday Rufus Andrews had replied to McIntire's request for payment, that the note should be paid on Monday. When McIntire first called with the note, on Monday, Rufus said his wife had not had time to go and get the money. But later in the day she went, and Oren Andrews, one of the defendants, went with her, and got money of hers out of the bank, to be appropriated in payment of the note, and carried it to Rufus Andrews, who was confined to his house by sickness, and at the same time caused Rufus to be summoned as trustee of Ellen E. McIntire, in a suit brought by Oren Andrews & Co., upon a claim that she was liable to them for groceries furnished her brother, Marshall Wright, and originally charged to him, to the amount of $250. They claimed that she was a copartner of her brother, and their suit was subsequently entered in court and finally nonsuited.

The defendants proposed to McIntire that if he would allow $150 on the note, on account of this claim, the balance of the note should be paid; but he refused to do this.

After the trustee process had been served, and Rufus Andrews had notified McIntire that he could not pay the note for that reason, the money before mentioned was placed in the defendants' safe, and under their control, and they used it in the business of the firm or have it now.

The judge further found that if this money was the money of

the wife, and not that of Rufus Andrews deposited in her name, she assented to its being appropriated to the payment of the note, or such disposition as the husband might make of it to secure such payment, or to secure his brothers for their liability on the note.

While the case was in progress before the jury, Ellen E. McIntire, a witness for the plaintiff, was asked the following question by the plaintiff: " Did you know of his (Rufus Andrews) having any visible means except the boarding-house that he bought of you, and the bank book ? " This was objected to by the defendants' counsel, but the objection was overruled and the witness answered as follows :

" The understanding was, it was all he had. He said he had so much in the Essex bank."

Plaintiff then asked the following question : "How much did he say he had on his bank book?" This was excluded and not answered.

The presiding judge, in considering the case, held that the first question (which was answered) was immaterial and based no conclusion upon the answer.

The defendants appeared personally at the trial and testified in the case, denying that any bank book or other security was given them as security for signing the note, as stated by plaintiff's witnesses. And Rufus Andrews, called as a witness by them, testified that he did not say anything about a bank book to his brother at the time he signed the note—that he had no recollection of it—that he hadn't any bank book at that time, and never had any. But the presiding judge found the facts as hereinbefore stated.

Upon all the facts proved, as above stated, the presiding judge was of the opinion that the plaintiff was entitled to recover, and that the want of a demand and notice sufficient to charge an indorser, would not prevent his recovery, and he so ruled, and ordered judgment for the plaintiff for six hundred dollars and interest from the time the note fell due. The defendants alleged exceptions.

*James Wright, pro se.*

*D. D. Stewart,* for the defendant, cited Laws of Mass., 1874, c.

404. *Akers* v. *Demond*, 103 Mass. 323. *Stickney* v. *Jordan*, 58 Maine, 107. *Cline* v. *Baker*, 99 Mass. 255. *Portland & Ken. R. R. Co.* v. *Bartlett*, 12 Gray, 244. *Allen* v. *Brown*, 124 Mass. 78, note. *Gibson* v. *Machine Co.*, 124 Mass. 546.

The law in Massachusetts is settled that taking security by an indorser is no waiver of demand and notice. *Creamer* v. *Perry*, 17 Pick. 332. *Haskell* v. *Boardman*, 8 Allen, 38. 1 Par. N. & B. 571–5.

The claim about the pledge of money, its appropriation, and authority to sureties to use it, was after defendants were legally discharged from their liability, and was a matter with which plaintiff had nothing to do ; the whole matter is *res inter alios*. *Ray* v. *Smith*, 17 Wall. 411. 2 Dan. Neg. Ins. § 1129. *Haskell* v. *Boardman, supra. Andrews* v. *Boyd*, 3 Met. 339. 1 Par. N. & B. 572, and cases cited. *Moses* v. *Ela*, 43 N. H. 557, 560. Story Prom. Not., § 278.

DANFORTH J. The note in suit in this case, is evidence of a contract made in Massachusetts by parties residing there, and so far as appears to be performed there. Hence it must be construed in accordance with the laws of that commonwealth. The defendants signed the note upon the back in blank.

The case finds that at the time the note was executed and delivered there was in force in Massachusetts a statute of the following tenor : " All persons becoming parties to promissory notes payable on time by a signature in blank on the back thereof, shall be entitled to notice of the non-payment thereof the same as indorsers." It will be noticed that this statute does not require a demand of the maker, but simply a notice of non-payment; which as the case finds was not seasonably given.

It is suggested in the argument that under the statute a notice to a party whose signature is upon the back of the note in blank is in all cases required and that therefore its omission in this case is fatal to the maintenance of the action. It is true that no exceptions in express terms are made in the statute. But the notice required is such and only such as indorsers would be entitled to. If then the facts are such as would excuse notice to an indorser,

the same facts must necessarily excuse notice to a promisor sign-ing as these defendants did. The necessity of notice to an indorser depends upon the contract, which may be express or implied, so notice to a surety " the same as an indorser " must in a like man-ner depend upon such contract as may be made by the parties or inferred from the facts. It cannot be required in the latter case, if under the same circumstances it would not be in the former.

The main question then involved in this case is whether upon the facts found by the justice presiding the defendants were entitled to notice of the non-payment of the note.

Whatever conflict there may be in the decisions of different courts in regard to the necessity of notice to an indorser who has security for his liability as such, there appears to be none, when the property pledged for such indemnity is appropriated to, and the indorser is authorized by the contract to use it for the pay-ment of the note. In such case it is very clear that notice may be dispensed with. By such appropriation there is a trust reposed in the indorser, and by his acceptance of it an implied promise on his part that such trust shall be faithfully performed. In a certain sense the indorser becomes original promisor and assumes the place of the maker of the note. He therefore suffers no injury from the fact that he is not notified of the omission of an act which fidelity to the principal, as well as to the payee, required him to perform. Story Prom. Notes, § 281. Red. & Big. Lead. Cas. 467. *Haskell* v. *Boardman,* 8 Allen, 38, 41. *Ray* v. *Smith,* 17 Wall. 411, 416.

In this case the presiding justice found that at the time the defendants indorsed the note as sureties " they were fully secured for all liability assumed by them as such." This security appears to have been a bank book showing a deposit in a savings bank, in the name of the maker's wife. Subsequently as the case finds, one of the defendants went with the wife and got the money out of the bank, " to be appropriated in payment of the note." This appears to have been done with the consent of both husband and wife. Hence whatever may have been the effect of the original security the subsequent appropriation brings the plaintiff's case within the principles of undisputed law. That this took place after

the maturity of the note is not material, for it was not only a waiver of any release which might have accrued to the surety, but was a confirmation of the original pledge, and the appropriation after the maturity can be no less effectual but rather more so than if made before. The implied promise would rather be strengthened, for the inference is that both maker and surety at that time looked to that fund as the sole means of paying the note. Nor does the fact that the surety paid the money to the maker of the note for a purpose of his own, change the result; for when that purpose failed of its accomplishment, the money was returned and now remains with the defendants, as we may well infer, to carry out the original design. Whether the money belongs to the husband or wife there seems to be no reason why the defendants should withhold it from the payment of the note to which it was appropriated with the consent of both, and which consent so far as appears has never been withdrawn.

*Exceptions overruled.*

APPLETON, C. J., WALTON, BARROWS and LIBBEY, JJ., concurred.