UNITED STATES of America
v.
**Ernest J. JACKSON, James Earl Jackson.**

Cr. No. 1126.

United States District Court
District of Columbia.

April 4, 1957.

Oliver Gasch, U. S. Atty. for Dist. of Columbia, Arthur J. McLaughlin, Asst. U. S. Atty., Washington, D. C., for plaintiff.

J. Leon Williams, Washington, D. C., for defendants.

KEECH, District Judge.

This case was tried by the court without a jury, the defendants and their counsel having, in open court, waived trial by jury. A pre-trial motion to suppress was heard and denied by Judge Tamm, but the motion was renewed at time of trial and forms the principal basis of the defendants' motion for a judgment of acquittal.

The court is aware that there is a difference of opinion as to whether a ruling on a motion to suppress prior to trial is binding upon the trial court. Our Court of Appeals had not ruled squarely on this point. In Gatewood v. United States, 93 U.S.App.D.C. 226, 230, 209 F.2d 789, 793, the Court stated, "Were it necessary to a decision here, we should be inclined to hold, as we intimated in the Cefaratti case, that under Rule 41(e) a pretrial denial of a motion to suppress, made after indictment, is not binding on the trial judge."

The trial court held to the contrary in United States v. Jennings, D.C., 19 F.R. D. 311, 312, quoting from Waldron v. United States, 95 U.S.App.D.C. 66, at page 70, 219 F.2d 37, at page 41, in which it is said:

"It seems clear to us that a ruling on a motion to suppress evidence becomes a controlling rule in the case just as does a ruling made during a trial. * * * Once the court has disposed of a point concerning the admission or exclusion of evidence, litigants must proceed to try the case accordingly."

This statement, however, does not deny the right of a trial judge to reverse another judge's pre-trial denial of a motion to suppress when, upon the evidence adduced at the trial, he finds that there has been an unconstitutional invasion of the defendant's rights by the search and seizure. In the Waldron case, the Court held merely that a defendant does not waive his objection to the admission of evidence obtained by an illegal search by failing to object again when the evidence is offered at the trial, if a pre-trial

motion to suppress has been made and denied. At page 70 of 95 U.S.App.D.C., at page 41 of 219 F.2d, the Court stated further:

"* * * Of course a trial court may reverse itself on a point during trial, but that possibility does not create an obligation on the part of counsel constantly to renew their contentions."

It would appear to this court that the rule is no different where the pre-trial motion to suppress and the trial are before different judges.

In the instant case, however, whether the pre-trial ruling be held binding upon the trial court, or whether the trial court be permitted to rule again on the legality of the search and seizure, the result is the same.

Briefly stated, the evidence disclosed the following facts: The narcotics agents for some months prior to the arrest had been observing the activities of the two defendants at various addresses in the District of Columbia, including premises 23 Ninth Street, N. E. Both defendants had been observed frequently in the company of known addicts and persons known to be in the narcotics traffic. The agents had information that James maintained the room at 23 Ninth Street, N. E., for the purpose of storing narcotics, and Ernest had been seen entering the premises.

Some time during the morning of October 5, 1956, Detective Panetta of the Narcotics Squad of the Metropolitan Police Department, received information from a reliable informer, Doris Suter, who was then living with the defendant James at 1443 Girard Street, N. W., that Ernest J. Jackson had gone to New York to procure narcotics, and that James was waiting at 1443 Girard Street for Ernest to call him on his return from New York. This information was relayed to Agent Wilson of the Federal Bureau of Narcotics. Thereafter, Ernest was kept under observation in New York City by Agent Dukas, from about 4:30 to 7 p. m., when the agent lost the car operated by

him in the vicinity of the Lincoln Tunnel. Agent Dukas then informed the Washington Field Office that Ernest had left New York, en route back to the District of Columbia. About midnight Agents Wilson, Gabrys, Andrews, and Thompson, accompanied by Detectives Panetta and Holcomb, went to Chillum, Maryland, where the Baltimore-Washington Parkway enters the District of Columbia, in order to intercept Ernest upon his return to Washington. They remained there until about 2:30 a. m., October 6, separating to go to different points in the District where Ernest might be expected. Agent Andrews, on his way to check Ernest's home, was passed by him, driving a Ford automobile bearing the license numbers which the agents had been given. He followed the car to near Ninth and A Streets, N. E., where Ernest parked it, observed Ernest go inside premises 23 Ninth Street, N. E., at about 2:54 a. m., and a few minutes later saw James enter the building.

The other officers and agents joined Agent Andrews and kept the house under observation. While they were waiting, Detective Panetta, one of the arresting officers, telephoned the informer and was advised by her that James had received a call from Ernest to meet him at the Ninth Street room, where they could "cap up", that is, put the heroin in capsules for retail sale. At about 4:20 a. m. the two defendants came out and got into Ernest's car. As soon as they started off the agents and detectives followed in two automobiles, closing in on the defendant's car when it had gone about half a block. The two defendants were placed under arrest, removed from the car, and searched briefly. James had in his possession 130 capsules containing a heroin hydrochloride mixture. Ernest on being arrested exclaimed: "I'm clean! I'm clean! You haven't got anything on me!" The initial search revealed that each of the defendants had a key to the front door of 23 Ninth Street, Ernest's door key being recovered from the key ring in the ignition of his car. The officers and agents then returned immediately to the Ninth Street premises with the defendants, unlocked a padlock on the door of the room rented by James, for which both defendants had keys, and upon a search of the room found in a television set an additional 244 capsules also containing a heroin hydrochloride mixture. The officers had neither arrest nor search warrants.

 As to the validity of the arrests: The rule is that a police officer may arrest without a warrant one believed by him on reasonable cause to have committed a felony. Carroll v. United States, 267 U.S. 132, 156, 45 S.Ct. 280, 69 L.Ed. 543; McQuaid v. United States, 91 U.S.App.D.C. 229, 231, 198 F.2d 987, certiorari denied 344 U.S. 929, 73 S.Ct. 499, 97 L.Ed. 715. "Probable cause exists where 'the facts and circumstances within their [the officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that' an offense has been or is being committed." Brinegar v. United States, 338 U.S. 160, 175–176, 69 S.Ct. 1302, 1310, 93 L.Ed. 1879. Probable cause may be based in part upon hearsay, Seymour v. United States, 85 U.S.App.D.C. 366, 177 F.2d 732, or wholly upon hearsay if the information is received from a known informer, reasonably believed to be reliable, Wrightson v. United States, 98 U.S.App.D.C. 377, 236 F.2d 672.

 In the instant case, Doris Suter, the informer, although known to be a narcotic addict, was also known to be living with one of the defendants, and she had upon prior occasions furnished reliable information upon which other police officers had acted. Her information as to Ernest's presence in New York, his return therefrom by automobile, and his arrangement to meet James at the Ninth Street room upon his return, all had proved true, to the officers' knowledge prior to the arrests. Hence, her information that Ernest was bringing back narcotics was reasonably to be relied upon, and that hearsay information, plus the agents' own observation of the ac-

tivities of Ernest and James over a period of months, constituted probable cause for the arrests. It is immaterial to the validity of the arrests that the officers had received the information as to Ernest's expected importation of narcotics anticipatory of his return to Washington.

The court therefore holds that the arrests were valid.

As to the validity of the search and seizure: "The right without a search warrant contemporaneously to search persons lawfully arrested while committing crime and to search the place where the arrest is made in order to find and seize things connected with the crime as its fruits or as the means by which it was committed * * * is not to be doubted." Agnello v. United States, 269 U.S. 20, 30, 46 S.Ct. 4, 5, 70 L.Ed. 145, and cases there cited. The search immediately after arrest of the two defendants' persons and the automobile in which they were riding was clearly within this right.

■ As to the search of James' room immediately thereafter, it has been held that the search incidental to arrest may be extended beyond the immediate place of arrest to an adjacent area within the defendant's control, where the officers are making a reasonable and bona fide search for evidence indicating guilt of the crime for which he was arrested. Harris v. United States, 331 U.S. 145, 152, 67 S.Ct. 1098, 91 L.Ed. 1399.

Thus, it has been held that a search for liquor in an adjacent shop and connecting shed contemporaneous with an arrest for liquor violations was a valid search incidental to arrest. Todd v. United States, 5 Cir., 48 F.2d 530. A search for narcotics in an untenanted room under the control of defendant in a rooming house was held lawful as incidental to arrest of defendant in her adjacent apartment on a narcotics charge. Henderson v. United States, 5 Cir., 206 F.2d 300, 303, certiorari denied 346 U.S. 915, 74 S.Ct. 274, 98 L.Ed. 410. Search of the house of another, from which the person arrested had just brought untaxed whiskey, was upheld as incidental to arrest, Clifton v. United States, 4 Cir., 224 F.2d 329, certiorari denied 350 U.S. 894, 76 S.Ct. 152, 100 L.Ed. 786. Search of a house was upheld as incidental to arrest of the defendants in the woods after they had emerged from the house, where the officers had information that whiskey was being sold at the place and observed apparent sales of whiskey from the nearby woods and the house. Crawford v. United States, 4 Cir., 160 F.2d 629.

■ On the other hand, a search without a warrant removed in place and time from the arrest, cannot be justified as incidental to a lawful arrest. Agnello v. United States, supra, 269 U.S. at page 33, 46 S.Ct. at page 6. Nor can a general exploratory search for evidentiary materials which may tend to connect accused with some crime be upheld on the pretext that it is incidental to an arrest. Go-Bart Importing Co. v. United States, 282 U.S. 344, 51 S.Ct. 153, 75 L.Ed. 374; United States v. Lefkowitz, 285 U.S. 452, 52 S.Ct. 420, 76 L.Ed. 877.

As has often been pointed out by the Supreme Court, the constitutional safeguard is against "unreasonable" searches and seizures, and the reasonableness of searches must find resolution in the facts and circumstances of each case. United States v. Rabinowitz, 339 U.S. 56, 63, 70 S.Ct. 430, 94 L.Ed. 653.

■ In the instant case, under all the facts and circumstances, the extension to James' room of the search incidental to arrest was not unreasonable, inasmuch as the premises were under defendants' control, he had emerged therefrom immediately before the arrest carrying narcotics, and the search was confined to a legitimate search for evidence of narcotics violations, for which defendants had been arrested. Although the arrests were made half a block distant, they occurred as soon after defendants left the premises as the officers could reasonably stop their automobile, the entire search being contemporaneous with the arrests and in the course of the same transac-

tion. The search was not unreasonable because the officers had waited to make the arrests when the defendants left the rooming house, rather than breaking in and looking through the building for James' room, a course of action which might have given the defendants an opportunity to destroy the contraband or to escape.

It has been argued by the defense that the officers and agents had ample opportunity to obtain a search warrant because they had received, many hours prior to the arrests, information as to the expected importation of narcotics into the District of Columbia by Ernest and that James maintained the Ninth Street room for the purpose of storing narcotics. It must be pointed out that until the officers knew Ernest had returned to the District from New York, they had no ground to believe he was presently in possession of narcotics in the District of Columbia or that there were presently narcotics in the Ninth Street room or in Ernest's car in the District of Columbia. They were not aware of Ernest's return until approximately 3 a. m., and the arrests were made about 4:20 a. m.

It is the view of this court that the hour of the early morning, the type of evidence involved, which was susceptible of quick disposal, the fact that James' room was in a rooming house, with a number of people residing therein, who had possible access to the room, all made it unreasonable and possibly ineffective to attempt to secure a search warrant.

■ Furthermore, assuming the officers had time to procure a search warrant, they were not bound to do so, if the search was otherwise reasonable. As stated in United States v. Rabinowitz, supra, 339 U.S. at page 65, 70 S.Ct. at page 435:

"A rule of thumb requiring that a search warrant always be procured whenever practicable may be appealing from the vantage point of easy administration. But we cannot agree that this requirement should be crystallized into a *sine qua non* to

the reasonableness of a search. It is fallacious to judge events retrospectively and thus to determine, considering the time element alone, that there was time to procure a search warrant. Whether there was time may well be dependent upon considerations other than the ticking off of minutes or hours. The judgment of the officers as to when to close the trap on a criminal committing a crime in their presence or who they have reasonable cause to believe is committing a felony is not determined solely upon whether there was time to procure a search warrant. Some flexibility will be accorded law officers engaged in daily battle with criminals for whose restraint criminal laws are essential."

■ As to Count 1, relating to the defendant James Earl Jackson alone, I find the government has proved beyond a reasonable doubt that such defendant was in possession of the narcotics described in that count, in the District of Columbia, that they were not in or from the original stamped package, and that there was no legal explanation of such possession. Upon the statutory presumption arising from possession of such narcotics, I find the government has proved beyond a reasonable doubt the defendant James Earl Jackson guilty of facilitating the concealment of the same heroin hydrochloride, knowing it to have been illegally imported into the United States, as charged in Count 2.

As to Counts 3 and 4, relating to the defendants James Earl Jackson and Ernest J. Jackson, I find the government has proved beyond a reasonable doubt that said defendants were in constructive possession of the narcotics described in those counts, that they were not in or from the original stamped package, that there was no legal explanation of such possession, and that the defendants facilitated the concealment of the heroin hydrochloride, knowing it to have been illegally imported into the United States.

I therefore find each defendant guilty as charged, and said defendants will stand committed. Their respective cases will be referred to the Probation Officer for presentence report.