David LERNER and Bernard Lerner, Appellants,

v.

UNITED STATES, Appellee.

No. 2289.

Municipal Court of Appeals for the District of Columbia.

Argued Dec. 8, 1958.

Decided May 13, 1959.

---

2. Harrington v. Heaney, D.C.Mun.App., 1953, 101 A.2d 838, 840.

3. Friedman v. Decatur Corporation, 1943, 77 U.S.App.D.C. 326, 135 F.2d 812.

William R. Lichtenberg, Washington, D. C., with whom Joseph Luria, Washington, D. C., was on the brief, for appellants.

Charles W. Halleck, Asst. U. S. Atty., Washington, D. C., with whom Oliver Gasch, U. S. Atty., and Carl W. Belcher, Asst. U. S. Atty., Washington, D. C., were on the brief, for appellee.

Before ROVER, Chief Judge, and HOOD and QUINN, Associate Judges.

ROVER, Chief Judge.

Appellants were convicted of possessing with the intent to sell lewd and obscene photographs, films, and literature in violation of Code 1951, § 22–2001. Evidence seized under a search warrant was admitted at trial and appellants' principal contention here is that their motion to suppress, seasonably filed before trial and renewed during the trial, should have been granted on the ground that the warrant was issued without probable cause.

The showing of probable cause in this case rests chiefly on the affidavit of one Hipsley, a paid informer who had assisted the police on previous occasions. From this, it appears that in the month prior to the execution of the affidavit, Hipsley met and associated with a man named Corbo. In the course of their conversations, Corbo stated that he knew of a place where pornographic material was sold and was willing to take Hipsley there, but wanted "a cut out of the deal." Arrangements were made to make a purchase and the two agreed to meet in a restaurant on February 4, 1958. On that day, at Corbo's direction, the two men drove in Hipsley's car to the corner of Second and C Streets, N. E. Corbo was given twenty dollars to buy an assortment of pictures and books and was seen by Hipsley to enter a small drug or sundry store (owned by appellants) at 150 C Street.

Five minutes later, Corbo returned to the car where Hipsley was waiting and gave him a quantity of pictures and books and six dollars in change. Later that day, Hipsley turned the purchase over to the police.

The affidavit also contains the sworn statement of a police officer which discloses that he received and examined the material purchased. To this is added, "Further, from information received over the past month I strongly believe that there are other pictures, books, films of an indecent and obscene nature secreted on the premises." On the basis of this affidavit, the commissioner issued a search warrant which was executed in the presence of appellants, the proprietors of the store, the day after Corbo's purchase.

Appellants attack the affidavit in two particulars. They first contend that it does not set forth facts tending to show probable cause that an offense was being committed on the premises in question. This argument merges with their second contention which is that material averments of the affidavit were controverted by the affiants themselves in their testimony. Accordingly, they argue that these allegations should not have been considered by the court in determining whether probable cause existed.[1]

Appellants' position becomes clearer when the testimony of the affiants on the controverted matter is reviewed. At the pre-trial hearing on the motion to quash the search warrant and suppress the evidence, the police officer testified, in contrast to his previous statement, that he had not received any information other than Hipsley's bearing on appellants' activities in the month prior to the execution of the affidavit. Nor did he have any independent or personal knowledge that an offense was being committed on the premises during this period of time. He stated that other information he possessed had been acquired during the course of the previous year. This testimony was repeated during the trial when, before a different judge, appellants were permitted to renew the motion. The Government does not challenge the court's ruling reopening the matter and we do not think it error.[2] Cause for rehearing the issue was undoubtedly established as a result of the affiant Hipsley's testimony. Both at the pre-trial hearing and on direct examination at the trial, Hipsley testified, in accordance with his affidavit, that he saw Corbo enter the store at 150 C Street. Under cross-examination, the defense developed that the entrance leading to the door of appellants' store was a common passageway which also included an adjacent door to a small grocery store in the adjoining building at 148 C Street. Hipsley then testified that from his position in the car, he could see only the common entrance and was unable to see either door.[3] After a full hearing and argument, the court again denied appellants' motion to suppress.

1. Appellants also argue that the affidavit contains statements of a hearsay nature. The causes of Seymour v. United States, 85 U.S.App.D.C. 366, 177 F.2d 732 and United States v. Jackson, D.C.D.C., 149 F.Supp. 937, reversed on other grounds, 102 U.S.App.D.C. 109, 250 F.2d 772, holding that probable cause may be based in part on hearsay would seem to be dispositive of this point. See also footnote 4 in Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327.

2. Although there is some difference of opinion as to whether a pre-trial motion to suppress is binding upon the trial judge, approval of the procedure adopted here is intimated in Gatewood v. United States, 93 U.S.App.D.C. 226, 230, 209 F.2d 789, 793; United States v. Cefaratti, 91 U.S.App.D.C. 297, 301, 202 F.2d 13, 16, certiorari denied 345 U.S. 907, 73 S.Ct. 646, 97 L.Ed. 1343; United States v. Jackson, supra. Contra, United States v. Jennings, D.C.D.C., 19 F.R.D. 311, but see opinion affirming, 101 U.S.App.D.C. 198, 247 F.2d 784.

3. Hipsley's testimony was as follows:
"Q: Now, Mr. Hipsley, could you see the entrance to this door from where you were sitting in your automobile on February 4th? A: Not directly the doorway.
"Q: That is all I am asking you, sir. Could you see the door to the entrance of 150 C Street from where you were sitting? A: No.
"Q: Could you see the entrance of 148 C Street from where you were sit-

■■ The validity of a search warrant is dependent upon the facts shown in the affidavit before the issuing authority. No clear-cut test can be laid down as to what facts must be stated to justify the issuance of a warrant, but as one court has said, " * * * [I]n each case the inquiry is, are the facts put forward to support the action impeached in any way and, if not, are they as a whole sufficient to support the view that the conclusion reached and the action taken in accordance with the rule were not unreasonable but reasonable." Clay v. United States, 5 Cir., 246 F.2d 298, 302, certiorari denied 355 U.S. 863, 78 S.Ct. 96, 2 L.Ed.2d 69. As the above rule indicates, probable cause is not a technical conception. It demands only that the facts in the affidavit be true when sworn to and that they be sufficient to satisfy the mind of a reasonably prudent and cautious man that a crime is probably being committed in the place designated.

Appellants' attack here is a serious one. They challenge not only the facts shown to support the affiants' knowledge that a crime was committed at 150 C Street, but also show that the statement in the affidavit identifying these premises was falsely made. In urging the second point, appellants' reliance is not on the conflicting testimony of witnesses, but on the testimony of the affiant impeaching his own statement. The right of a defendant to challenge the authenticity of an affidavit or the truth of the statements contained therein has been indicated in several cases.[4] The question arises, however, as to the effect the false statements have on the affidavit in determining the existence of probable cause.

■ In United States v. Henderson, D.C. D.C., 17 F.R.D. 1, the late Chief Judge Laws held that *mistaken facts* in an affidavit should not be given the same effect as correct facts. He then determined the existence of probable cause independent of the mistaken facts. A similar ruling was made in an earlier case before the adoption of the present federal rule governing search and seizure. Atlanta Enterprises v. Crawford, D.C.N.D.Ga., 22 F.2d 834, 837. While we are not prepared to hold that this rule should be applied in a case where an honest mistake has been made,[5] we think it controlling where the statement is falsely made.

■ Re-examining the showing of probable cause made in this case, it appears that little more is shown than that Hipsley learned that pornographic material was being sold somewhere; that he drove Corbo to the corner of Second and C Streets, N. E., and saw the latter pass through an entrance which might have led to two stores and possibly the apartments above; and finally that Corbo returned with the material purchased. Hipsley did not know appellants or anything about them. He did not see Corbo enter appellants' store and did not see the sale made. Hipsley had never been in appellants' place and from his position in the car was unable to see into the store. The facts shown, we think, amount only to suspicion or conjecture that an offense was being committed on the premises at 150 C Street.

The deficiencies in the affidavit are not cured by the statement of the police officer. In its original form, the statement expresses only a belief or conclusion and would of itself be insufficient to support a warrant.[6]

ting? A: I could see the aperture as you showed in the picture between the two frontings of the buildings there. I can show you in the picture if you want me to.

    *     *     *     *     *

"Q: But you couldn't see the actual entrance to those doors? A: No."

4. See United States v. Bell, D.C.D.C., 17 F.R.D. 13; Townsend v. United States, 5 Cir., 253 F.2d 461; Clay v. United

States, supra; Dixon v. United States, 5 Cir., 211 F.2d 547; United States v. Nagle, D.C.N.D.N.Y., 34 F.2d 952. See also annotation, 5 A.L.R.2d 394, 407.

5. See Brinegar v. United States, 338 U.S. 160, 176, 69 S.Ct. 1302, 1311, 93 L.Ed. 1879.

6. Schencks v. United States, 55 App.D.C. 84, 2 F.2d 185; United States v. Reynolds, D.C.D.C., 111 F.Supp. 589, affirmed 94 U.S.App.D.C. 189, 213 F.2d 619.

In its discredited form, the statement is of no assistance. If the police, during the months prior to the search, did in fact have knowledge of appellants' nefarious activities, this information should have been incorporated in the affidavit. Though remote in time, these facts when brought up to date or supplemented by more recent knowledge might have disclosed sufficient grounds to support a warrant. See United States v. Fitzmaurice, 2 Cir., 45 F.2d 133; United States v. Nichols, D.C.W.D.Ark., 89 F. Supp. 953.

Accordingly, we conclude that the search warrant was invalid and the resulting search was illegal. Appellants' motion to quash the warrant and suppress the evidence should have been granted.

Reversed.