RAY *v.* SMITH.

1. Although it may be conceded that notice of demand and non-payment of a note need not be given to an indorser who has received funds from the maker, indisputably and only for the purpose of paying the note whenever presented (an indorser in such a case becoming liable as a principal debtor), yet as such a rule does not apply when the indorser having funds of the maker has them not in that way, but only from the profits of a business in conducting which he was a partner of the maker, and is simply authorized to apply the funds so in his hands to the pay-

---

* Norris *v.* Jackson, 9 Wallace, 125; Lincoln *v.* Claflin, 7 Id. 136; Leftwich *v.* Lecanu, 4 Id. 187; Russell *v.* Ely, 2 Black, 580.

ment of notes *at* their maturity, and thus may have parted with them a certain time *after* the maturity,—in such a case it is error to take away from the jury the question whether the note was legally presented to the maker for payment, and whether notice of dishonor was legally given to the indorser. The most that in such a case can properly be asked by the holder of the notes, is that the evidence should be submitted to the jury to find whether it proved that the defendant had become the principal debtor by arrangement between him and the maker, with instructions that if it did, the plaintiff was entitled to recover; and that if it did not, the indorser could not be held liable without proof of reasonable demand upon the maker, and notice.

2. Though a party may have taken exception before a trial to the refusal of a court then to suppress a deposition, yet if he allow the deposition to be read on the trial without opposition, he cannot avail himself, in this court, of his previous exception.

ERROR to the District Court for the Middle District of Alabama; the case being thus:

Smith, in November, 1866, sued Ray in the court below as the indorser of two negotiable notes, made by one Harkaway. The notes were both dated April 12th, 1861, and were made payable at the Bank of Mobile, one on the 1st day of March, 1862, and the other on the 1st day of November, in the same year. Both the maker and the indorser were then, and continued to be, citizens of the State of Alabama; and the holder of the notes was, and continued to be, a citizen of the State of New York. When the notes fell due in 1862, they were not presented for payment, in consequence of the war of the rebellion then existing, but they were presented in 1866, a certain time after the close of the war, and were dishonored. Notice of the dishonor was then given to the indorser.

The plaintiff alleged, in his declaration, as an excuse for the non-presentation of the notes at the time when they fell due, the existence of the civil war, and the residence of the holder in the State of New York, and that of the maker and indorser in Alabama, regions then at war with each other; and alleged further that he had presented the notes and given notice of the dishonor within a reasonable time after the termination of the war, specifying the date of the presentation, &c. The defendant set up that the date named

was not reasonable in point of time.  And evidence was given as to when the war ended and intercourse was resumed; when the notes could have been presented, and when they were in fact presented.

A portion of the evidence (descriptive of the course of business out of which the claim arose) was derived from a deposition of the plaintiff, taken *de bene esse*, which before the trial the defendant had moved to suppress.  The court on this motion refused to suppress it.  An exception was taken to this refusal, but on the trial it was read without objection.

It appeared in evidence that the maker of the notes, and Ray, the indorser, were partners in a business which was actively conducted by Ray; that after the notes were indorsed to the plaintiff, and before their maturity, Ray had in his hands of the profits of the business, belonging to the maker, a sum larger than the amount of the two notes; that this sum remained in his hands until after the notes matured, and that he was authorized to apply it to their payment, at their maturity.  But it also appeared that he could not find the notes at their maturity, nor until the spring of 1866, at which time, as already said, they were presented to the maker for payment, and that before they were thus presented, the maker had instructed the defendant to apply the sum in his hands to the payment of other debts, which the defendant had done.

The court charged:

"If there were no evidence in this case that the maker of the notes in suit had provided the indorser with funds to discharge them at maturity, then the question whether the notes were legally presented for payment, and the question whether legal notice of protest was given to the indorser, would have had to be submitted to the jury.  The evidence on this point is that Ray was provided by the maker of the notes with the means of indemnifying himself against his indorsement.  He need not have parted with these means until the notes were paid and in his possession.  He chose to do so, however, and cannot now complain of the want of demand on the maker, or notice of

protest to himself. I therefore direct your verdict for the plaintiff for $1124.50, with interest thereon from the 4th March, 1862, and for $1124.50, with interest thereon from the 4th November, 1862."

To this charge the defendant excepted, and offered to state to the court the grounds of his exceptions; but the court refused any such statement.

Messrs. *R. T. Merrick* and *S. F. Rice,* for the plaintiff in error, insisted:

1st. That the court had taken the case improperly from the jury.

2d. That it had improperly refused to suppress the deposition before the trial.

*Mr. P. Phillips,* contra.

Mr. Justice STRONG delivered the opinion of the court.

Whether timely presentment of the notes was made to the maker, and whether due notice of their dishonor was given to the defendant who had indorsed them, are questions which were not submitted to the jury. The court below appears to have been of opinion, that in view of the facts given in evidence, neither demand of payment nor notice to the indorser was necessary to justify a recovery against him. The jury was instructed in substance, that even if there was no legal demand and notice, the want of them was sufficiently excused; and that the plaintiff was entitled to a verdict for the amount of the notes with interest from the dates when, according to their terms, they fell due. It is necessary, therefore, to inquire whether the evidence, as exhibited in the bill of exceptions, warranted such instructions.

It is undoubtedly the law, that though the plaintiff was relieved by the war from obligation to make demand upon the maker of the notes when they came to maturity, it was necessary for him, in order to charge the indorser, to make such demand within a reasonable time after it became pos-

sible; that is, after the close of the war; unless he was excused by the fact that the indorser had sufficient funds of the maker in hand, which he had received in the course of a current business, and which he had authority to apply to the payment of the notes at their maturity. And whether that alone constituted a sufficient excuse, is the real question now.

An indorser of a promissory note is only secondarily liable. His responsibility is, in its nature, a contingent one, and ordinarily, performance of the condition to make demand of the maker and give notice of his default in due time is an essential part of the title of one who asserts an indorser's liability. It has often been regretted that courts have dispensed with the performance of that condition for any cause. Still, the principal reason for the requirement of demand and notice is, that the indorser, if looked to for payment, may have the earliest opportunity to take steps for his own protection. Hence, it has been said, in some cases, that when by no possibility a failure to make demand and give notice could have injured him, or rather, when they could by no possibility have enabled him to protect himself, proof of demand and notice are not necessary. It must be admitted there has been much inconsistency in the decisions respecting the application of this rule. In some, it has been held that if an indorser has taken an indemnity from the maker, he is not entitled to notice of default. But this is not sustained by sound reason, and the best-considered cases assert the contrary doctrine. The indemnity may prove insufficient. At all events, it is not inconsistent with the existence of a remedy over against the maker, and the correct rule, as stated by Bailey, J., in *Brown* v. *Maffey,** is that every indorser ought to have notice whenever he has a remedy over. All the cases agree, however, that when, by arrangement between the maker and the indorser, the latter has become the principal debtor, and primarily liable, he may not insist upon notice. Presentment to the maker fol-

* 15 East, 222.

lowed by notice to himself can be of no service to him, for he has no remedy over. And he becomes the principal debtor when, either before or at the maturity of the note, he is supplied by the maker with sufficient funds for the purpose of paying it. Receiving the funds for such an avowed purpose, he assumes an obligation to take up the note; and, as has been said, he may be regarded as an agent who has undertaken to pay, and who, therefore, cannot be disappointed if his principal, trusting to his obligation, takes no further steps for the payment.

In the present case, the evidence does not necessarily establish that the funds which the indorser held were placed in his hands for the purpose of paying the notes. They were derived from the profits of the business, in conducting which he was a partner of the maker; and he was merely authorized to apply them to the payment of the notes, at their maturity. Whether this proved the existence of an obligation assumed by him to take them up, or in other words, whether, as between him and the maker, he thus became the primary debtor, is a question which the court could not correctly answer in the affirmative as a conclusion of law. If it did establish such an obligation, absence of demand and notice were immaterial, and the plaintiff was entitled to a verdict. But if it did not, if the indorser, as between himself and the maker, had not become the principal debtor, if the authority to pay the notes out of the fund in his hands was only an arrangement for his indemnity, we think he was at liberty to pay them to the maker at any time after the maturity of the notes, and before he had any notice that they remained unpaid. In such a case, his liability to the holder remained contingent, and consequently, unless there was a legal demand and notice, he cannot be charged. It follows, that the judge of the court below erred in directing a verdict for the plaintiff. The most that could properly be claimed by the holder of the notes, was that the evidence should be submitted to the jury to find whether it proved that the defendant had become the principal debtor by arrangement between him and the maker, with instruc-

tions that if it did, the plaintiff was entitled to recover; and that if it did not, the indorser could not be held liable without proof of reasonable demand upon the maker, and notice.

Nothing more need be said respecting the charge given to the jury. But as the case goes back for another trial, it is proper to notice an exception taken to the refusal of the court to suppress the deposition of the plaintiff. The deposition had been taken *de bene esse*, and before the trial the defendant moved to suppress it. But when it was offered at the trial, it was read without objection, and without exception. It may be that had it been objected to then, it should not have been received. But after having permitted it to be read at the trial without opposition, we think it cannot be objected now that the court received it.

JUDGMENT REVERSED, AND A NEW TRIAL ORDERED.