**Robert O. WALDRON, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 12075.**

United States Court of Appeals, District of Columbia Circuit.

Argued Nov. 23, 1954.

Decided Jan. 13, 1955.

Mr. William E. Rollow, Washington, D. C., for appellant.

Mr. Carl W. Belcher, Asst. U. S. Atty., Washington, D. C., with whom Mr. Leo A. Rover, U. S. Atty., and Messrs. Lewis Carroll and Edward P. Troxell, Asst. U. S. Attys., Washington, D. C., were on the brief, for appellee.

Before PRETTYMAN, BAZELON and DANAHER, Circuit Judges.

PRETTYMAN, Circuit Judge.

Appellant Waldron was indicted, tried and convicted of housebreaking and larceny. He appeals principally upon the ground that the District Court erred in denying a motion to suppress certain evidence, later introduced at the trial. He says this evidence was seized in an illegal search of his apartment.

Waldron was being held in Arlington County, Virginia, upon charges. He there refused consent for a search of the apartment where he and his wife lived in Washington. His wife went to see him, and the Arlington police told her they wanted to search the apartment. Her testimony was that the police "said if they had to get a search warrant, that it wouldn't be their responsibility of what happened to what was in the apartment, and if I were to let them in on my own free will, that they would put everything back where they got it from." She agreed to the search. Asked why she agreed, she testified: "I just didn't want them tearing the place up, that's all; from the way they talked I figured it would be better if I let them go in on my free will than have them tear the place up, because I didn't know what they would do." She was eighteen years old at the time and three months pregnant. The Arlington police notified the Metropolitan police in Washington. Officers of the latter force met officers of the former at the Waldron apartment. Without further ado Mrs. Waldron let them in. They searched the place, and in a shoe box belonging to Mr. Waldron they found a pawn ticket which led to the recovery of a camera later shown to have been stolen. This property is the evidence in dispute.

Mrs. Waldron's account of her acquiescence to the search was not contradicted or disputed by evidence at the hearing. No Arlington police officer testified. No Metropolitan officer was present when the assent was sought and given. The only testimony of the Metropolitan officers was that upon the party's arrival at the apartment Mrs. Waldron did not protest. She had no need to, since she had already agreed.

■ It is well established that when police officers want to search a person's home they must have either a search warrant or a knowing, voluntary permission, unless the search is incidental to a lawful arrest or there are other circumstances which justify a departure from the rule.[1] There were no such circumstances in this case.

■ In the case before us the Metropolitan police are not to blame. They came into the case upon routine request of the Arlington police, and they evidently thought the Arlington police had obtained consent from the Waldrons. Mrs. Waldron made no protest in their presence. But we have before us uncontradicted testimony as to how acquiescence was obtained. That testimony shows beyond question that consent was not voluntarily given by Mrs. Waldron. And, perhaps of more importance, no consent at all was given by Mr. Waldron.[2]

■■ The Government argues that, even if there was no valid consent to the search, the evidence was not unlawfully seized by federal agents and so is not within the rule excluding illegally seized evidence in federal court proceedings. Whatever may be the rule governing the use of evidence unlawfully seized by state officers,[3] "a search is a search by a federal official if he had a hand in it;"[4] if he participated in it

---

1. United States v. Jeffers, 1951, 342 U.S. 48, 51, 72 S.Ct. 93, 96 L.Ed. 59, and cases there cited.

2. See Judd v. United States, D.C.Cir., 1951, 89 U.S.App.D.C. 64, 190 F.2d 649.

3. See Byars v. United States, 1927, 273 U.S. 28, 33, 47 S.Ct. 248, 71 L.Ed. 520.

4. Lustig v. United States, 1949, 338 U.S. 74, 78, 69 S.Ct. 1372, 93 L.Ed. 1819.

"as a federal enforcement officer, upon the chance \* \* \* that something would be disclosed of official interest to him as such agent."[5] At the hearing on the motion to suppress in the present case, the testimony of the two Metropolitan police officers clearly shows that they participated in the search, within the meaning of Byars and Lustig.[6]

■■■ Another argument advanced by the Government rests upon Waldron's failure to object at the trial to the admission in evidence of the pawn ticket and the camera, or to the oral testimony describing the discovery of these exhibits. The Government argues: (1) If upon an appeal a person desires to complain of an illegal seizure of physical evidence, he must have objected to the admission of such evidence at the trial, even after an erroneous denial of a motion to suppress; and (2) if such a person desires to attack the admissibility of oral testimony concerning articles recovered by an illegal search and seizure, he must have objected to such testimony at the trial.[7] Cradle v. United States[8] is cited. But in Cradle the physical evidence which was admitted at the trial was not shown to have been evidence which Cradle had sought to suppress in his prior motion

under Rule 41(e).[9] Therefore, as to the exhibits which were admitted, no attack at all had been made in the District Court. The case before us presents a totally different situation. The pawn ticket and the camera are admittedly articles which Waldron sought to have suppressed in his motion under Rule 41(e). He made an attack on that evidence in the trial court. Cradle does not apply and does not preclude complaint on appeal concerning an erroneous ruling on the motion to suppress.

With regard to oral testimony relating to articles illegally seized, Cradle holds that upon an appeal the appellant cannot successfully attack the admissibility of such evidence when (1) the articles themselves were not introduced at the trial and (2) no objection was made to the testimony. But in our present case the oral testimony relates to physical evidence which was admitted at the trial. Thus this case differs from Cradle and does not come within its rule.

■■ Neither the decision in Cradle nor the decision in the case at bar is in conflict with Rule 41(e). That Rule provides that a motion to suppress as evidence illegally seized property "shall be made before trial \* \* \* but the court in its discretion may entertain the

5. Byars v. United States, supra note 3, 273 U.S. at page 32, 47 S.Ct. 249.

6. Supra notes 3 and 4. Detective Wallace of the Metropolitan police stated on direct examination: "\* \* \* we recovered some articles that were stolen in Virginia, and the main thing we got was a small pawn ticket \* \* \*." (Emphasis added.) Detective Cook testified as follows:
"Q. \* \* \* did you have occasion to participate in the search of certain premises said to have been the premises of the defendant?
"A. Yes, I did.
\* \* \* \* \*
"Q. How long were you there searching?
"A. Roughly, between 30 and 45 minutes, I'd say.
"Q. Did you recover some property there, or anything which you retained?
"A. There was a pawn ticket which I particularly noticed, and this ticket was

taken by the Arlington police who promised to run it out, and suggested that in the event it was anything that pertained to the Washington Police Department they would let us know.
\* \* \* \* \*
"A. \* \* \* And they [the Arlington police] got in touch with us, and of course, we were interested."

7. The Government says that the oral testimony at the trial by Government witnesses and by Waldron himself, regarding the pawn ticket and the camera, cured any prejudice which might have resulted from an erroneous admission of the physical evidence. To the extent that Waldron seeks to overcome this argument, he is attacking the admissibility of the oral testimony.

8. D.C.Cir., 1949, 85 U.S.App.D.C. 315, 178 F.2d 962, certiorari denied, 1950, 339 U.S. 929, 70 S.Ct. 624, 94 L.Ed. 1350.

9. Fed.R.Crim.P. rule 41(e), 18 U.S.C.

motion at the trial". The basic purpose of the rule is to prevent, so far as possible, the delay and attendant confusion resulting from attacks during a trial on the admissibility of illegally seized evidence; a trial would have to be interrupted and the jury recessed while the court heard the motion to suppress.

It seems clear to us that a ruling on a motion to suppress evidence becomes a controlling rule in the case just as does a ruling made during a trial. A litigant is not required—indeed he may possibly not be permitted—to renew contentions upon which the court has ruled.[10] Once the court has disposed of a point concerning the admission or exclusion of evidence, litigants must proceed to try the case accordingly. Of course a trial court may reverse itself on a point during trial, but that possibility does not create an obligation on the part of counsel constantly to renew their contentions.

It seems to us the same elementary principles must apply when a motion to suppress has been made under Rule 41(e) and denied by the court. In denying such a motion based upon an allegation of unconstitutional search and seizure, the court passes upon an important point of law, frequently one of the most important in the case. The court conducts a hearing for the purpose, receives evidence, and renders a legal judgment. If it were necessary that the point be raised again during the course of the trial, the whole procedure of hearing, testimony, etc., would have to be repeated, a useless performance; or the court would merely enter again its prior conclusion without further hearing, an equally useless performance. The movant has a right to renew his point; it would be safer and more skillful to interpose an objection when the evidence is offered; but we think he is not required to do so. He does not waive it and is not barred from pressing it upon appeal, if he merely abides the court's ruling and tries the remainder of his case accordingly.[11] To hold otherwise would be to inject a pure technicality, without a purpose, into the conduct of trials, requiring counsel to repeat a contention already disposed of in the proceeding; and this in respect to a waiver of a constitutional right. The fact that the court might in its discretion entertain a motion to suppress during the trial does not make it obligatory upon parties to renew such motions during trial or to object in any other way to the evidence at the trial.

It is true that under federal practice before the new rules of procedure, when a motion to suppress a deposition was made and denied before trial, the objection to it was deemed to be waived if not renewed when the deposition was

---

10. Circuit Judge Learned Hand, writing for the Second Circuit in Keen v. Overseas Tankship Corp., 1952, 194 F.2d 515, certiorari denied, 1952, 343 U.S. 966, 72 S.Ct. 1061, 96 L.Ed. 1363, had this to say on the point:

"Moreover, the plaintiff's failure later to repeat the objection, or to conform literally to Rule 51, was not a 'waiver' of the ruling against him [citing cases]; he had taken his position, had lost, and he was free thereafter to win a verdict if he could within the narrower borders of the case that the judge had laid down for him. Nothing goes further to disturb the proper atmosphere of a trial than reiterated insistence upon a position which the judge has once considered and decided. The notion is wholly untenable that in order to protect himself against an imputed surrender, a party must reassert what has been overruled every time the occasion comes up again." Id., 194 F.2d at page 519.

Circuit Judge Kalodner, in the opinion for the Third Circuit in Green v. Reading Co., 1950, 183 F.2d 716, quoting from the opinion in Moreau v. Pennsylvania R. Co., 3 Cir., 1948, 166 F.2d 543, 545, said: "Counsel must make his points clearly so that the trial judge may see what they are and if he believes they are right, follow them. But he is not required to indulge in reiterative insistence in order to preserve his client's rights."

11. See Cogen v. United States, 1929, 278 U.S. 221, 223, 49 S.Ct. 118, 73 L.Ed. 275.

offered at trial,[12] and it may be that the same rule then applied to motions to suppress evidence. The rationale of that rule was that unless an objection was made at the trial the point did not come into the bill of exceptions and so was not open upon appeal.[13] That reasoning no longer applies, as bills of exceptions, and even exceptions themselves,[14] are no longer used; and the proceedings on the motion to suppress evidence are part of the trial proceedings.[15]

In the case at bar the search without a warrant was illegal.[16] The property found in the search was illegally seized. The motion to suppress should have been granted.

The judgment of the District Court is reversed and the case remanded with instructions to grant a new trial.

Reversed and remanded.

12. Northern Pacific Railroad v. Urlin, 1895, 158 U.S. 271, 15 S.Ct. 840, 39 L.Ed. 977; Brown v. Tarkington, 1865, 3 Wall. 377, 70 U.S. 377, 18 L.Ed. 255; Ray v. Smith, 1873, 17 Wall. 411, 84 U.S. 411, 21 L.Ed. 666.

13. Brown v. Tarkington, 1865, 3 Wall. 377, 70 U.S. 377, 18 L.Ed. 255.

14. Fed.R.Crim.P. rule 51.

15. Gatewood v. United States, D.C.Cir., 1953, 93 U.S.App.D.C. 226, 230, 209 F. 2d 789, 792–793.

16. Higgins v. United States, D.C.Cir., 1954, 93 U.S.App.D.C. 340, 209 F.2d 819.