UNITED STATES of America, Appellee,

v.

Maurice A. WHEELER, Appellant.

No. 12925.

United States Court of Appeals Third Circuit.

Argued Nov. 4, 1959.

Decided March 2, 1960.

Alexander Cooper, Pittsburgh, Pa. (Robert M. Taylor, Philadelphia, Pa., on the brief), for appellant.

John R. Gavin, Asst. U. S. Atty., Pittsburgh, Pa. (Hubert I. Teitelbaum, U. S. Atty., Pittsburgh, Pa., on the brief), for appellee.

Before McLAUGHLIN, KALODNER and HASTIE, Circuit Judges.

McLAUGHLIN, Circuit Judge.

The docket in this appeal goes back to September 9, 1954, when appellant was indicted for income tax evasion in connection with his 1950 income tax return. Thereafter, inter alia, the defense moved to suppress evidence and dismiss the indictment. A hearing was allowed on the factual issue raised. The evidence showed that defendant had been suspected of involvement in some wrongful conduct by revenue employees. This was what had initially directed attention to defendant's tax returns. As a result an audit of them was made as to their correctness and whether they were connected with the department problem under scrutiny. Evidence regarding the latter seems to have been sought against the others suspected rather than Wheeler. The investigating agent only told Wheeler of the first objective when he sought access to Wheeler's records.

The investigation disclosed indictable evidence against Wheeler for income tax evasion but nothing re his supposed connection with reprehensible conduct of revenue agents. The motion to suppress was denied without prejudice to defendant's right to object to the evidence at the trial. Later a petition for reargument and reconsideration was denied. The defendant's appeal on this was dismissed for lack of jurisdiction.

On August 27, 1956 a second petition for rehearing of the motion was filed. This was heard by another judge who granted the motion. The government's petition for rehearing was denied and coupled with this, the new judge in the case dismissed the indictment on the ground that it had been obtained by presenting to the grand jury evidence ruled to have been illegally acquired. On appeal we reversed that decision holding that since it was based on substantially the same testimony as had been considered by the first judge, though there were some different witnesses, it was nothing more than a review of the earlier decision and an abuse of discretion.[1]

Following the return of the case to the district court, appellant was tried to a jury under the one count indictment charging him with income tax evasion and convicted.

On the motion for a new trial, the first point argued was that "The verdict is against the weight of the evidence." As to this Judge Marsh said:

"On the merits, the evidence was overwhelming, and not denied, that defendant failed to report substantial taxable income for the year 1950. The only defense advanced on the merits was that he did not knowingly and willfully intend to evade the tax. On abundant evidence, the jury found that the defendant will-

1. United States v. Wheeler, 3 Cir., 1958, 256 F.2d 745, certiorari denied 358 U.S. 873, 79 S.Ct. 111, 3 L.Ed.2d 103, rehearing denied 358 U.S. 913, 79 S.Ct. 229, 3 L.Ed.2d 234.

fully filed a false and fraudulent return for that year." [172 F.Supp. 279.]

Appellant here asserts that there was error in the denial of his petition to suppress evidence and his trial motion to the same effect. He charges fraud and deceit were practiced upon the defendant by the government agents in obtaining his books and records from him to assist them in a criminal investigation; he claims he did not voluntarily turn over his books and records to the government agents nor voluntarily consent to their use against him; he contends that his constitutional rights under the Fourth and Fifth Amendments were violated by the said agents.

What appellant is endeavoring to do is to relitigate his motion to suppress the evidence obtained by the government from its examination of his books, records and files. The original motion, in accordance with the mandate of Rule 41(e) Fed.R.Crim.P., 18 U.S.C.A., was made before trial. It was properly passed upon by the trial court and denied. That ruling was affirmed by us in 256 F. 2d 745. At the trial it was urged again on the same evidence and was rightfully denied. Nardone v. United States, 1939, 308 U.S. 338, 341–342, 60 S.Ct. 266, 84 L.Ed. 307; Waldron v. United States, 1955, 95 U.S.App.D.C. 66, 219 F.2d 37; United States v. Jennings, D.C.D.C.1956, 19 F.R.D. 311, affirmed, 1957, 101 U.S. App.D.C. 198, 247 F.2d 784.

■ The contentions that fraud and deceit were practiced by the government agents in obtaining the evidence involved are disposed of completely by the district court's finding (with justification in the record) that:

"At the trial, defendant was permitted to cross-examine the Government agents concerning everything they did and said to him when they requested permission to examine his records; and defendant was permitted to testify as to what those agents did and said. This testimony shows a complete absence of coercion, pressure or compulsion on the part of the agents. Indeed, the defendant testified that he voluntarily produced all his records upon request and fully cooperated with the agents. Likewise, there was no evidence of any false statements, or of any affirmative deceitful or fraudulent misrepresentations; there was no promise of immunity."

The trial transcript reveals plainly that appellant knew from his first telephone talk with Agent Kreiger that his 1950 and 1951 tax returns were being investigated and that he willingly arranged with Kreiger for the latter to come to his office about these and to have his pertinent books and records available for Kreiger.[2] Later Kreiger with another agent, Madden, called on appellant at his office. According to appellant, Madden said: " * * * *there was a suspicion in their mind of fraud* and that they would like to have my records for 1949 and 1952. I (appellant) had no '49 records, and the '52 records which consisted of my cash book and my check stubs I turned over to Mr. Madden and to Mr. Kreiger." (Emphasis supplied.) On recross-examination appellant was asked: "These records which you *voluntarily* turned over to Agents Kreiger and Madden are the same records, I take it, that you had access to when you prepared your 1950 income tax return, were they not?" (Emphasis supplied.) Appellant answered, "Yes, sir."

Under the guise of violation of his rights under the Fourth Amendment, appellant would, without any additional or new evidence which had not been produced at the pretrial hearings, have the evidence developed by the government

2. Appellant testified that:
    "Mr. Kreiger had called me on the telephone and said that he was from the Internal Revenue Service, had my '50 and '51 returns, and would like to come over to my office and see me about them and to have whatever books and records I had on those available for him. I said that would be fine."

from appellant's records passed on by the jury with reference to its competency. Having in mind that this precise question had already been decided by Judge Miller, that the described method before Judge Miller of the government in obtaining that evidence was substantially the same as was testified to at the pretrial hearing before the second judge, the question was one of fact and law for the court. Steele v. United States, 1925, 267 U.S. 505, 511, 45 S.Ct. 417, 69 L.Ed. 761; Burris v. United States, 5 Cir., 1951, 192 F.2d 253, 254–255. In United States v. Frank, 3 Cir., 1957, 245 F.2d 284, relied upon by appellant, there was additional evidence presented at the trial to the same judge who had denied the pretrial motion to suppress.

■ The thesis urged under the Fifth Amendment is much the same i. e. appellant was induced to incriminate himself through fraud and deceit. And the record simply does not in any way support that.

Appellant's sole reliance is placed on the proposition that at the time the government request was made regarding a conference with him on his 1950, 1951 income tax returns and to examine his records, the agent did not tell him that the department suspected him of wrongful dealings with internal revenue personnel. He himself actually did testify as above noted that in connection with the checkup he was told by Agent Madden that fraud was suspected, at which time he was asked for more of his tax returns. And he did agree under oath at the trial that he had voluntarily turned over his records to the government agents for investigation by them.

Appellant's contention is completely without merit. As we said in our opinion in 3 Cir., 1958, 256 F.2d 745, at page 746:

> "In fact the investigation developed nothing on the point of involvement, but it did turn up evidence which the authorities apparently considered warranted indictment for income tax evasion. The investigation thus concluded with exactly

what is a foreseeable result of any income tax return audit, should the audit develop evidence of fraud."

Smith v. United States, 1954, 348 U.S. 147, 151, 75 S.Ct. 194, 99 L.Ed. 192, is urged as in line with appellant's theory. That opinion is inapplicable. Its facts are entirely different; and it is based upon conflicting evidence which is not the situation presented by the record before us.

The important relevant inquiry in this case is whether appellant freely gave his consent to have his records examined with the knowledge that his returns were being investigated. The answer to that inquiry is unequivocally, yes.

Appellant's trial was meticulously fair. There is no error of any substance in the record. He was convicted on what a most experienced trial judge characterizes as "abundant evidence".

The judgment of the district court will be affirmed.