Edward C. **KUHL**, Appellant,

v.

**UNITED STATES** of America, Appellee.

No. 18688.

United States Court of Appeals Ninth Circuit.

Sept. 12, 1963.

William H. King, San Francisco, Cal., for appellant.

Cecil F. Poole, U. S. Atty., and Jerrold M. Ladar, Asst. U. S. Atty., San Francisco, Cal., for appellee.

Before BARNES and DUNIWAY, Circuit Judges, and KUNZEL, District Judge.

BARNES, Circuit Judge.

This is an appeal from appellant's conviction after a trial by jury on four counts alleging violation of federal counterfeiting laws—three substantive (18 U.S.C. § 474)[1] and one a conspiracy count (18 U.S.C. § 371).

1. Section 474 reads:

*"Plates or stones for counterfeiting obligations or securities*

"Whoever, having control, custody, or possession of any plate, stone, or other thing, or any part thereof, from which has been printed, or which may be prepared by direction of the Secretary of the Treasury for the purpose of printing, any obligation or other security of the United States, uses such plate, stone, or other thing, or any part thereof, or knowingly suffers the same to be used for the purpose of printing any such or similar obligation or other security, or any part thereof, except as may be printed for the use of the United States by order of the proper officer thereof; or

"Whoever makes or executes any plate, stone, or other thing in the likeness of any plate designated for the printing of such obligation or other security; or

"Whoever sells any such plate, stone, or other thing, or brings into the United States any such plate, stone, or other thing, except under the direction of the Secretary of the Treasury or other proper officer, or with any other intent, in either case, than that such plate, stone, or other thing be used for the printing of the obligations or other securities of the United States; or

"Whoever has in his control, custody, or possession any plate, stone, or other thing in any manner made after or in the similitude of any plate, stone, or other thing, from which any such obligation or other security has been printed, with intent to use such plate, stone, or other thing, or to suffer the same to be used in forging or counterfeiting any such obligation or other security, or any part thereof; or

"Whoever has in his possession or custody, except under authority from the Secretary of the Treasury or other proper officer, any obligation or other security made or executed, in whole or in part, after the similitude of any obligation or other security issued under the authority of the United States, with intent to sell or otherwise use the same; or

Count I charged appellant with making two aluminum plates for the impression of a twenty dollar bill; Count II with making three photographic negatives of a twenty dollar bill; Count III with possession of the plates; Count IV with possession of the negatives; and Count V with conspiring with codefendant Heisler to violate the said counterfeiting statute.

Practically all of the physical evidence against the two defendants was obtained by the police either (a) in a search of Heisler's home on January 3, 1962, or (b) in a search of Kuhl's automobile after his arrest on the same day.

Alameda County Sheriff's officers, together with San Pablo and El Cerrito police, arrested defendant Heisler on two warrants; one, an Alameda County Sheriff's Office warrant for violation of probation, and a second from the Oakland Police Department, charging forgery and felony check offenses. There had also been El Cerrito felony check "charges" lodged against Heisler, but no warrant for his arrest on those charges.[2]

The search of the Heisler house at 1914 Pablo Vista, San Pablo, was thorough. It included his living room, bedrooms, garage, bureau drawers, closets and bookcases.

In the bookcase was discovered a photograph (Government's Ex. 6) of defendant Kuhl and his brother taken on the Heisler premises at a New Year's party two days earlier. Sergeant Armstrong, one of the arresting officers, recognized the picture as being that of Kuhl, whom he had "investigated" in October 1961. The investigation related to the storing of a duplicating machine on property owned by Kuhl.

Armstrong had kept the premises known as 2755 14th Avenue, San Pablo (where the Kuhls lived), under surveillance for a week prior to January 3, 1963, and had noted that an automobile was sometimes parked near that address; a 1950 blue two-door Pontiac automobile, license number EPN 809, that had (strangely) once been owned by Armstrong, Kuhl had been under investigation since October 1961 when in the night time Kuhl had moved a printing press into a storeroom on 1745 California Street in San Pablo. The suspicion of the police was that he was printing checks to be used in forgery operations.

On January 3, 1963, after taking Heisler to the police station, Armstrong started back to the Heisler residence, and when "in the area" of the Heisler residence (about two blocks away) saw the 1950 blue two-door Pontiac car being driven by Kuhl "away" from the Heisler residence area. Armstrong turned his car around, called for assistance, followed the Pontiac, and had another officer (Gaarsee) stop the Pontiac. Gaarsee talked to Kuhl (both seated in the police car) until Armstrong went back to the Heisler residence to verify that it was Kuhl who was in fact one of the persons in the picture found on Heisler's premises. Armstrong looked again at the photograph and then ordered Kuhl arrested on suspicion of violation of California Penal Code, § 476,[3] and the car

"Whoever prints, photographs, or in any other manner makes or executes any engraving, photograph, print, or impression in the likeness of any such obligation or other security, or any part thereof, or sells any such engraving, photograph, print, or impression, except to the United States, or brings into the United States, any such engraving, photograph, print, or impression, except by direction of some proper officer of the United States; or

"Whoever has or retains in his control or possession, after a distinctive paper has been adopted by the Secretary of the Treasury for the obligations and other

securities of the United States, any similar paper adapted to the making of any such obligation or other security except under the authority of the Secretary of the Treasury or some other proper officer of the United States—

"Shall be fined not more than $5,000 or imprisoned not more than fifteen years, or both."

2. Cf. Heisler v. United States, 9 Cir., 321 F.2d 641.

3. California Penal Code, § 476 reads:
"*Making, possessing, uttering, etc., fic-*

impounded (Impounding Order, Pltff's Ex. 11). It was released to the registered owner, Margaret Swazy, 4863 Appian Way, El Sobrante.

Kuhl's residence had been under surveillance by the police since Kuhl had been present when Mr. Heisler had rented an apartment in El Sobrante. Heisler had been under surveillance because of the police's suspicion that he was forging checks.

The search of the Heisler house, made before the Kuhl arrest, disclosed that one bedroom had been converted into a darkroom or photographic laboratory. (Gov.'s Ex. 1i.) The government's Exhibits 1h and 1g were photographs of aluminum plates found in the bureau drawer of the photographic room. (Gov.'s Exs. 2a and 2b were likewise photos of the plates.) Government's Exhibit 1f was a photo of bottles of photographic solutions; Government's Exhibit 1e, a photograph of developing equipment in the garage, and 1d was a photograph of graph paper manufactured by Addressograph-Multigraph, found on top of the dresser in the photographic room. Government's Exhibit 1b was a photograph of solutions found in a closet. Government's Exhibit 1a was the Multigraph machine found in the garage at 1914 Pablo Vista. The aluminum plates disclosed by Exhibits 1h, 1g, 2a and 2b were identified as photographic offset multilith plates of United States twenty dollar bills.

In addition to the foregoing, the government seized, in the search of the house, the following:

Government's Exhibit 9: three photographic negatives, two of face and one of back of a Federal Reserve twenty dollar note (found in bureau drawer);

Government's Exhibit 12: a box of clean-up sheets;

Government's Exhibit 14: the camera (on table of room at 1914 Pablo Vista);

Government's Exhibit 16: exposure frame (on top of bureau);

Government's Exhibit 17: one of two packages of Multilith Master presensitized aluminum offset plates (found in room);

Government's Exhibit 19: an aluminum plate (found in a drawer);

Government's Exhibit 20a, b and c: three sheets of yellow graph paper (in the bureau);

Government's Exhibit 21: tracing paper tablet (in the bureau holding yellow graph paper);

Government's Exhibit 22; Ansco film holder (on the table); and

Government's Exhibit 23: a twenty dollar note (genuine) found in an envelope with the Exhibit 9 negatives.

Seized from the Kuhl automobile were Government's Exhibits 7 and 8, aluminum offset plates, which had been partially destroyed or burned, but still had portions of the back of a twenty dollar Federal Reserve note attached to the frame.

## I

### ERRORS ALLEGED

Appellant urges three errors:

(1) The denial of appellant's *pre-trial motion* to suppress the evidence taken from his car.

(2) The denial of appellant's *pre-trial motion* to suppress the evidence taken from the premises at 1914 Pablo Vista.

---

*titious instruments; intent; punishment*

"Every person who makes, passes, utters, or publishes, with intention to defraud any other person, or who, with the like intention, attempts to pass, utter, or publish, or who has in his possession, with like intent to utter, pass, or publish, any fictitious bill, note, or check, purporting to be the bill, note, or check, or other instrument in writing for the payment of money or property of some bank, corporation, copartnership, or individual, when, in fact, there is no such bank, corporation, copartnership, or individual in existence, knowing the bill, note, check, or instrument in writing to be fictitious, is punishable by imprisonment in the county jail for not more than one year, or in the State prison for not more than fourteen years."

(3) The denial of appellant's *motion made during the trial* to suppress the evidence taken from his car.

We find no merit in any of the errors urged.

■ The short answer to the second alleged error—*the pretrial motion* to suppress the evidence taken from the premises at 1914 Pablo Vista, is that no such motion was ever made by appellant Kuhl.

A. The motion made by appellant's counsel refers solely to "property seized by State and/or Federal authorities *from the automobile he was using* on or about January 3, 1962, and unlawfully *taken from the said automobile* [etc., etc.] * * *" (Clerk's Tr., Doc. 5. Emphasis added.)

B. The affidavit in support of the motion so filed (Clerk's Tr., Doc. 6) refers to the property allegedly unlawfully seized as "the contents of the auto I was driving."

C. The Reporter's Transcript of the hearing shows the following:

"*Mr. Preovolas:* [Attorney for Kuhl] I question the right at this point to conduct a search of the premises, if this is the fact.

"*The Court:* This is the search of a house?

"*Mr. Preovolas:* That is right, Your Honor.

"*The Court:* The automobile hasn't come into this yet?

"*Mr. Preovolas:* Well of course they are going to link up this evidence with the defendant, too.

"*The Court:* They may do that * * *" (Tr. p. 4.)

D. On the trial, appellant made no proper objection to the evidence seized in the house search, nor any motion to suppress it, on any ground.

Appellant's brief states that "on the hearing, appellant's * * * attorney made it plain that he was objecting not only to the seizure of the evidence contained in appellant's automobile, but also to the use of evidence seized from the premises at 1914 Pablo Vista." This is simply not correct. A careful examination of the Reporter's Transcript reference shows the *only* reference is on page 4, which is quoted in full, supra. We find the question now urged was never raised by defendant Kuhl at the trial, and only incidentally and inferentially, if at all, prior to trial. Waldron v. United States, 1955, 95 U.S.App.D.C. 66, 219 F. 2d 37, may take care of the defendant's failure to object at the trial to that evidence which was the subject of the previous motion to strike, but it cannot correct or supply a lack of a motion to suppress never previously made to the trial court.

We therefore need not reach the questions (a) whether defendant Kuhl has standing to challenge the legality of the search of the Heisler premises; (b) whether the Heisler search was unreasonable because too extensive.[4]

## II

■ (1) Turning to the *first* and *third* alleged errors, we reach the problem of whether there existed probable cause to arrest Kuhl. We find on page 14 of the transcript a description of how Mr. Kuhl's automobile was stopped, and on page 32 of the transcript we learned of the speed of Mr. Kuhl's vehicle (if not its flight). Mr. Kuhl was going faster than thirty miles per hour and failed to make two boulevard stops.

(2) Mr. Kuhl's automobile was first discovered within two blocks of the Heisler residence going *away* from it. (Tr. p. 30.)

---

4. We point out, however, in connection with the latter point that at the time of Heisler's arrest, in view of what was obvious to anyone in the house, it would take little imagination on the part of the police officers to conclude counterfeiting was going on within the premises. "[R]easonableness of the search * * * depends upon the facts and circumstances—the total atmosphere of the case." United States v. Rabinowitz, 1950, 339 U.S. 56, 70 S.Ct. 430, 94 L.Ed. 544.

(3) Prior to the arrest of Mr. Kuhl, Officer Gaarsee who actually arrested him, saw in the Kuhl car "a roll of aluminum paper rolled up—felt paper, and a paper bag with light globes in it." (This was Gov.'s Ex. 3 on the motion to suppress. Officer Armstrong had not seen it, and probably Officer Gaarsee knew only dimly, if at all, the significance of what he saw.)

(4) Prior to the arrest, Officer Armstrong had known of Kuhl's being charged in the past "with forgery." Whether Armstrong thought *both* forgery and counterfeiting *charges* were to be found in Kuhl's record, is not entirely clear. The record disclosed at the trial that Kuhl admitted he had been convicted of forging and uttering a United States Treasury check, of burglary, auto theft, passing fictitious checks and robbery. This recital does not cover his several convictions as a minor. We do not have the police make-sheet before us—nor do we know anything about unproven *charges*, not the subject of elucidation on the government's cross-examination. Kuhl's record of convictions was gone into at the trial. What else appeared on his record as "charges," rather than convictions, is not before us. Counsel for defendant did not cross-examine Officer Armstrong as to such "charges."

(5) Prior to the arrest, Kuhl had been investigated in October 1961 concerning the moving "during the night" of a printing press and equipment into a shed in the rear of a house owned by Kuhl at 1745 California Street. (Tr. p. 114.)

(6) Prior to the arrest of Kuhl, police knew Kuhl had accompanied Heisler when Heisler rented an apartment in El Sobrante (3022 San Mateo Avenue) during a time Heisler was wanted on a forgery charge involving checks created by the use of copying machines (Tr. p. 124) Whether the police *then* knew Heisler had rented the apartment under a fictitious name does not appear in the record. Both "Gerald Smith" (Heisler) and Edward C. Kuhl, signed the lease; Kuhl as cosigner. (Tr. pp. 66–70.)

(7) Prior to the arrest of Kuhl, and for five days prior thereto, Kuhl's residence and automobile had been under police surveillance because of the suspicion that Kuhl was engaging in forgery and counterfeiting operations.

(8) On the day of the Heisler arrest, evidence indicative of counterfeiting was found in the Heisler premises. (Exs. 2a, 2b, 14, 16, 19, 21, 23, etc.) Heisler was arrested on a warrant charging forgery. Kuhl's picture, which had been *taken on the Heisler premises*, where the counterfeiting was going on, was found in the search.

(9) By happenstance, a "marked" (black and white) police car, investigating another matter, had been parked across the street from the Heisler residence on the morning of Heisler's arrest by nonuniformed officers. (Tr. p. 128.) Whether Kuhl had observed this fact or not, Armstrong did not know.

From the foregoing résumé of the facts known to the police arresting Kuhl, did the arresting officers have reasonable and probable cause to arrest him on "suspicion" of forgery or counterfeiting? [5]

California Penal Code, § 836, defines the officer's right to make arrests. It depends upon whether he, as "a reasonable person"—a prudent man—would reasonably and honestly believe that the person arrested had in truth committed a crime. This follows the federal rule. Mere suspicion is not enough. United States v. Di Re, 1948, 332 U.S. 581, 68 S.Ct. 222, 92 L.Ed. 210; Johnson v. United States, 1948, 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436. Nor is good faith alone sufficient. Henry v. United States, 1959, 361 U.S. 98, 80 S.Ct. 168, 4 L.Ed.2d 134. An arrest is not justified by what the subse-

5. There is, of course, no such crime as "suspicion of forgery or counterfeiting." The crime is that of forgery or counterfeiting. A person is sometimes referred to as having been arrested for suspicion of murder, but actually must be arrested for the crime of murder. The real question is, did reasonable cause exist to believe that this appellant had committed the crime of forgery or counterfeiting?

quent search discloses. Johnson v. United States, supra.

Would a prudent man in Armstrong's shoes have known and seen enough to permit him to believe that appellant was violating or had violated the law? We think so.

Appellant urges that "but four factors exist" to establish probable cause in the arresting officers' minds:

(a) The photograph found in Heisler's home.

(b) That Heisler was wanted on a forgery warrant and Kuhl had been to Heisler's apartment.

(c) The movement of the duplicating machine in the night.

(d) Appellant's appearance two blocks from Heisler's home.

All these are insufficient, says appellant, and are as consistent with "no cause" for arrest as with probable cause.

We add paragraphs 1, 3, 4, 6, 7, 8 and 9, as noted *seriatim* hereinabove, as factors which undoubtedly were considered by the arresting officers and which influenced their decision to arrest Kuhl; and which are to be considered by us.

The four facts mentioned by appellant may or may not, alone, be enough to arrest. That two persons suspected of forgery, with past records of such crimes, move a printing press into a residential area during the night, might well be such suspicious circumstances as to constitute probable cause to arrest. Such an act alone, when coupled with the other circumstances recited in this opinion, raises more than mere suspicion—more than "strong reason to suspect." It is not the act normally performed by innocent persons. Added are factors not existing in Henry v. United States, supra, relied upon by appellant.[6] "Probable cause exists if the facts and circumstances known to the officer warrant a prudent man in be-

lieving that the offense has been committed." Henry v. United States, supra, 361 U.S. at 102, 80 S.Ct. at 171, 4 L.Ed.2d 134; United States v. Di Re, supra, 332 U.S. at 592, 68 S.Ct. at 227, 92 L.Ed. 210.

But if we assume the four facts quoted by appellant more nearly resemble Hanna v. United States, 1958, 104 U.S.App.D.C. 205, 260 F.2d 723, and are not *alone* sufficient probable cause, we must consider the balance of the evidence pointed out above. We cannot disregard it, or assume the arresting officers did. We have no difficulty in concluding there was probable cause for arrest, and that the arrest was lawful. Unlike Collins v. United States, 5 Cir., 1961, 289 F.2d 129, cited by appellant, Kuhl was arrested for suspicion of forgery, and then charged with legally defined crimes—18 U.S.C. §§ 371, 474.

The search of both the person of Kuhl and of his car, being incident to a lawful arrest, were lawful, and there was no error in permitting the evidence so discovered to be introduced against Kuhl. In taking this view, we need not pass upon the proposition that no search of the appellant's car was necessary to discover the counterfeiting aids (Exs. 7 and 8), or the light globes, aluminum and felt paper (Exs. 12 and 12a), which were in plain view in the automobile to a person outside of it.

Our only additional comment is that the proof of appellant's guilt was overwhelming. He was tied into the conspiracy with Heisler in several ways. He bought counterfeiting equipment and supplies. His fingerprints were found on materials (Gov.'s Ex. 19) which he had denied he had ever seen. He "explained" that, although knowing nothing about printing, he had bought a $416 Multilith machine before he knew Heisler, but within a period of a few days sold it to Heisler for $250 and a radio. That as a

6. In Henry v. United States, supra, the defendant's companion was suspected of "some implication" in some stolen "interstate shipments." But *what* the shipments were and *how* defendant's companion was implicated does not appear on

the record. Defendant there had no criminal record, and not even a suspicion of one against him. All acts done were outwardly innocent. There was no flight. There was no furtive act.

sometimes auto repair man and watchmaker's assistant, he innocently bought for Heisler, advancing the costs, as much as $100 worth of technical photographic supplies, papers, chemicals, frames and plates, all within a short period of time. His explanation of his innocence, to say the least, does not ring true, and undoubtedly taxed the credulity of the jury, as it does ours.

Appellant has had extremely able representation by counsel, both here and below. No question of the sufficiency of the evidence, or error in instructions, is claimed. We find appellant had a fair trial.

We affirm his convictions on all counts.